IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

SMITHVILLE 169, et al.,            )
                                   )
    Plaintiffs,                    )
                                   )
v.                                 )    No. 4:11-CV-0872-DGK
CITIZENS BANK & TRUST COMPANY,     )
                                   )
    Defendant.                     )

## ORDER GRANTING DEFENDANT PARTIAL SUMMARY JUDGMENT BASED ON MISSOURI'S CREDIT AGREEMENT STATUTE OF FRAUDS

This case arises out of a $7,950,000 loan Defendant/Counterclaim Plaintiff Citizens Bank & Trust Company ("the Bank") made to Plaintiff/Counterclaim Defendant Smithville 169 which the other Plaintiffs/Counterclaimants guaranteed. The Bank alleges Smithville 169 and the guarantors failed to pay off the loan when it became due. Plaintiffs allege the Bank breached the loan agreements, committed a variety of economic torts, and violated the federal Equal Credit Opportunity Act ("ECOA").

Now before the Court are the parties' cross motions for summary judgment (Docs. 109 and 117) on their claims and defenses based on Missouri's Credit Agreement Statute of Frauds, Mo. Rev. Stat. § 432.047.[1] Finding that the statute is applicable and bars most of Plaintiffs' claims and Plaintiffs' affirmative defenses to Defendant's counterclaims, Plaintiffs' motion is DENIED and Defendant's motion is GRANTED IN PART.

**Summary Judgment Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

---

[1] Plaintiffs have requested oral argument on the motions. Finding that oral argument is unnecessary to rule on the pending motions, that request is denied.

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party who moves for summary judgment bears the burden of showing that there is no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

When considering a motion for summary judgment, a court must scrutinize the evidence in the light most favorable to the nonmoving party, and the nonmoving party "must be given the benefit of all reasonable inferences." *Mirax Chem. Prods. Corp. v. First Interstate Commercial Corp.*, 950 F.2d 566, 569 (8th Cir. 1991) (citation omitted). But the "facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (internal quotation marks omitted). "The nonmovant 'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

## Factual Background

For purposes of resolving the pending motion, the Court finds the relevant, uncontroverted material facts to be as follows.

Defendant/Counterclaim Plaintiff Citizens Bank & Trust Company ("the Bank") is a Missouri banking corporation located in Chillicothe, Missouri. Plaintiff/Counterclaim Defendant Smithville 169 is a Missouri limited liability company. Plaintiff/Counterclaim Defendant Nelson & Nelson Dev. Co. ("Nelson & Nelson") is a Missouri corporation. Plaintiff/Counterclaim

Defendants Jerry D. Nelson and Beverly J. Nelson were husband and wife.[2] Jerry Nelson is President of Nelson & Nelson, and Beverly Nelson was Vice President and Secretary.

Plaintiff/Counterclaim Defendants Michael S. Hales and Marlene S. Hales (collectively "the Haleses") are husband and wife and Kansas residents. Plaintiff/Counterclaim Defendant Hales Family Limited Partnership #6 ("HFLP") is a Kansas limited partnership.

On or about February 28, 2007, the Bank and Smithville 169 executed a Construction Loan Agreement ("the Loan") whereby the Bank agreed to loan up to $7,950,000 to Smithville 169 to commercially develop a piece of property located North of Missouri Highway 92 and West of U.S. Highway 169 in Smithville, Missouri ("the Project"). In exchange for the Loan, on or about February 28, 2007, Smithville 169 executed and delivered to the Bank a Promissory Note (the "Note") in the amount of $7,950,000, with an original maturity date of March 1, 2010. Jerry Nelson, Beverly Nelson, Nelson & Nelson, Mike Hales, Marlene Hales and HFLP (collectively "the Guarantors") executed Guaranty Agreements (individually "the Nelson Guaranty" and "the Hales Guaranty," collectively the "Guaranties") dated February 28, 2007 regarding the Loan. At the time Plaintiffs executed the loan documents, they were represented by counsel, Mark Arensberg, who reviewed and negotiated the loan documents on behalf of all of the Plaintiffs prior to their execution.

The parties modified the Loan documents in writing five times by extending the maturity date of the Note. The last modification occurred on April 28, 2011, when the parties extended the maturity date of the Note from March 31, 2011 to May 31, 2011.

---

[2] On October 31, 2012, Plaintiffs notified the Court that Plaintiff Beverly J. Nelson passed away on September 9, 2012 and that Plaintiffs intend to substitute Ms. Nelson's estate as a party plaintiff. Accordingly, the Court has substituted the Estate of Beverly Nelson for Ms. Nelson in this order. The Court would also like to extend its condolences to the Nelson family.

3

Plaintiffs did not make any payments on the Loan after May 31, 2011, and Smithville 169 did not pay the outstanding loan balance on the Note by the May 31, 2011 maturity date.

The Bank declared a default under the Note and made demand on Smithville 169 and the Guarantors before filing this action. There are no written agreements between Plaintiffs and the Bank whereby the parties agreed to extend the maturity date of the Note beyond May 31, 2011. There are also no written agreements between Plaintiffs and the Bank whereby the Bank agreed to continue funding the Project beyond May 31, 2011; nor are there any written agreements between Plaintiffs and the Bank whereby the Bank agreed to fund the Project in excess of $7,950,000. Finally, there are no written agreements between Plaintiffs and the Bank whereby the Bank agreed to liquidate other collateral securing the Note before pursuing claims against the Guarantors.

## Discussion

Missouri's Credit Agreement Statute of Frauds ("the Credit Statute") "acts as a statute of frauds to protect banks from losing their right to enforce a loan according to the terms of the written loan documents, if they informally attempt to accommodate debtors." *U.S. Bank National Ass'n v. Canny*, No. 4:10CV421CDP, 2011 WL 226965, at *2 (E.D. Mo. Jan. 24, 2011). The Credit Statute states:

> 1. For the purposes of this section, the term "credit agreement" means an agreement to lend or forbear repayment of money, to otherwise extend credit, or to make any other financial accommodation.
>
> **2. A debtor may not maintain an action upon or a defense, regardless of legal theory in which it is based, in any way related to a credit agreement unless the credit agreement is in writing, provides for the payment of interest or for other consideration, and sets forth the relevant terms and conditions.**

> 3. (1) If a written credit agreement has been signed by a debtor, subsection 2 of this section shall not apply to any credit agreement between such debtor and creditor unless such written credit agreement contains the following language in boldface ten-point type: "Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable, regardless of the legal theory upon which it is based that is in any way related to the credit agreement. To protect you (borrower(s)) and us (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.".
>
> (2) Notwithstanding any other law to the contrary in this chapter, the provisions of this section shall apply to commercial credit agreements only and shall not apply to credit agreements for personal, family, or household purposes.
>
> 4. Nothing contained in this section shall affect the enforceability by a creditor of any promissory note, guaranty, security agreement, deed of trust, mortgage, or other instrument, agreement, or document evidencing or creating an obligation for the payment of money or other financial accommodation, lien, or security interest.

Mo. Rev. Stat. § 432.047 (emphasis added). This language is very broad and "demonstrates the legislature's intent to eliminate *all* claims and defenses relating to a credit agreement if that credit agreement is not in writing." *BancorpSouth Bank v. Paramont Properties, L.L.C.*, 349 S.W.3d 363, 367-68 (Mo. Ct. App. 2011) (holding claims of promissory estoppel and equitable estoppel based on oral promises barred by § 432.047) (emphasis added). Courts have consistently held that the statute bars all claims and defenses in any way related to a credit agreement unless the agreement is in writing. *Id.*; *U.S. Bank Nat.'l Ass'n*, 2011 WL 226965, at *2. This includes tort and contract claims. *U.S. Bank Nat.'l Ass'n*, 2011 WL 226965, at *2.

This Court has also applied the Credit Statute to a claim of fraudulent misrepresentation. *Union Bank v. Murphy*, No. 4:10-CV-0714-DGK, 2012 WL 4404372, at *7 (W.D. Mo. Sept. 24, 2012).

In the present case, it is undisputed that the loan documents are written credit agreements for a commercial loan. It is also undisputed that the Construction Loan Agreement contains the required language in boldface, 10-point type on page 20. Accordingly, the Court holds the Credit Statute applies to Plaintiffs' claims and defenses.

Plaintiffs contend the Credit Statute does not apply because even though the Loan itself contains the required language, the documents the Bank is seeking to recovery under, the Note and the Guaranties, do not. The Court finds no merit to this argument. The Statute simply requires that the "credit agreement" between the lender and the debtor contain the requisite language; there is no requirement that the language be in every single Loan document.

Even if there were such a requirement, the Credit Statute would still apply because the required language is contained in the Note and the Guaranties by incorporation. "Under Missouri law, several documents in combination may supply the essential terms of a contract, where the documents refer to each other or their contents show they are closely related." *Cavalier Homes of Ala., Inc. v. Sec. Pac. Hous. Servs., Inc.*, 5 F. Supp. 2d 712, 717 (E.D. Mo. 1997). The loan documents here were prepared in tandem and executed at the same time at the closing on February 28, 2007. The Note and the Guaranties specifically incorporate the Loan. The Note provides that,

> This Note is secured by, among other items, a First Deed of Trust, Assignment of Leases and Rents, Security Agreement, and Fixture Filing of approximately even date herewith (the "Mortgage"), executed by the undersigned constituting a lien on real estate located in Clay County, Missouri, and **it is agreed that all of the covenants, conditions and agreements contained in said Mortgage as well as in the other Loan Documents (as hereafter**

6

> **defined) are hereby made a part of this Note**, and the holder of this Note is entitled to all the benefits thereof.

The Note (Doc. 110-10) at 2 (emphasis added). And the Guaranties state that,

> [E]ach Guarantor hereby absolutely, unconditionally and jointly and severally guarantees full and punctual payment when due . . . of . . . (ii) all obligations and indebtedness of Borrower arising under any of the Loan Documents . . .

Nelson Guaranty (Doc. 110-11) at 1-2; Hales Guaranty (Doc. 110-12) at 1-2.

Finally, Missouri caselaw holds the guarantor liable for whatever provisions are in the credit agreement; the guaranty itself need not contain the language in the credit agreement in order for the guaranty to be enforceable. *See Cardinal Health 110, Inc. v. Cyrus Pharm., LLC*, 560 F.3d 894, 902 (8th Cir. 2009) (holding that under Missouri law the guarantor was personally obligated to pay for attorneys' fees as provided for in the underlying credit agreement, even though the guarantee contained no attorneys' fee provision); *Ulreich v. Kreutz*, 876 S.W. 726, 730 (Mo. Ct. App. 1994) (holding the "long-standing rule in Missouri" is that the guarantor is responsible for payment of a note as written, including any provisions contained within the note); *Missouri Farmers Ass'n, Inc. v. Wolfe Bros., Farm, Inc.*, 681 S.W.2d 15, 19 n.6 (Mo. Ct. App. 1984) (quoting 38 C.J.S. Guaranty § 2 for the proposition that "[a] guaranty in its technical and legal sense has relation to some other contract or obligation with reference to which it is a collateral undertaking; it is a secondary and not a primary obligation."). In this case, the Guarantors agreed to guarantee the debt of Smithville 169 incurred under the Loan and the Note. Since the Statute applies to the Loan and the Note, the Guarantors cannot claim that the Credit Statute does not apply to the their obligation arising from the Loan and the Note.

7

Case 4:11-cv-00872-DGK   Document 183   Filed 02/05/13   Page 7 of 10

Accordingly, the Court holds the Credit Statute bars all of Plaintiffs' claims and defenses that are not based on the written loan documents, regardless of the legal theory under which they are brought. This includes Plaintiffs' fraud and mistake-based claims.[3]

Thus, the Court enters summary judgment in favor of Defendant on the following Plaintiffs' claims:

> Count II Promissory Estoppel (claim based on alleged representations relating to, but outside of, the loan documents);
>
> Count V Unclean Hands (claim based on alleged promises made outside of the Loan documents);
>
> Count VI Fraudulent Nondisclosure (claim based on nondisclosure of information relating to, but outside of, the loan documents);
>
> Count VII Fraud (claim based on alleged representations or nondisclosures made outside the loan documents);
>
> Count VIII Breach of Duty of Good Faith and Fair Dealing (claim based on representations and duty relating to, but outside of, the Loan documents);
>
> Count IX Tort of Breach of Duty of Good Faith and Fair Dealing (claim based on alleged representations made outside the Loan documents);
>
> Count X Breach of Fiduciary Duty (claim based on duty not arising from the Loan documents);
>
> Count XI Tortious Interference with Contracts and Business Expectancy (claim based on Plaintiffs' relationships and agreements with third-parties outside of the Loan);

---

[3] Plaintiffs argue that their fraud and mistake-based claims may still be brought pursuant to *Mika v. Central Bank of Kansas City*. 112 S.W.3d 82 (Mo. Ct. App. 2003) (holding that the fraud exception to the general statute of frauds, § 432.010, also applied to § 432.045). This would be a persuasive argument if it were not for the fact that the *Mika* decision concerned § 432.045, the predecessor to the Credit Statute, and that the very next year, apparently in response to the *Mika* decision, the General Assembly adopted the Credit Statute and used broader language suggested by the court of appeals. *U.S. Bank Nat.'l Ass'n*, 2011 WL 226965, at *2 n.5 ("Section 432.047 was enacted approximately one year after the decision in Mika and the legislature used precisely the phrase recommended by that court in the statute."). Accordingly, the Court rejects this argument.

8

Count XII Negligent and Malicious Breach of Contract against the Bank (claim based on alleged agreements outside of the Loan documents);

Count XIII Unjust Enrichment (claim based on alleged representations relating to, but made outside of, the Loan documents);

Count XV Rescission (claim based on alleged mutual mistake of fact relating to, but outside of, the Loan documents); and

Count XVI Equitable Subordination (claim based on alleged representations and nondisclosures relating to, but outside of, the Loan documents).

Similarly, the Court holds the Credit Statute bars the following affirmative defenses:

Nos. 3, 24, and 25 for Impossibility/Impracticability of Performance (defenses based on contingencies, assumptions, or expectations relating to but outside of the Loan documents);

Nos. 7 and 9 for Waiver/Estoppel (defenses based on representations made outside of the Loan documents);

Nos. 8 and 28 for Course of Dealing/Course of Performance (defenses based on expectations relating to, but arising outside of, the Loan documents);

No. 10 for Failure to Mitigate (defense based on events outside of Loan documents);

No. 11 Lack or Failure of Consideration (defense claiming consideration was insufficient for the collateral given does not arise from the terms of the Loan documents);

Nos. 12, 17, 18, 35, and 36 for Other Defenses (to the degree these purported defenses assert anything, the assertions are based at least in part on matters asserted outside of the Loan documents);

Nos. 13, 14, 16, and 29 for Fraud (defenses based on representations or nondisclosures relating to, but outside of, the Loan documents);

Nos. 15 and 20 for Unilateral/Mutual Mistake (defenses based on alleged facts relating to, but outside of, the Loan documents);

9

No. 19 for Unjust Enrichment (defense based on alleged representations made outside of the Loan documents);

Nos. 21 and 30 for Breach of the Duty of Good Faith and Fair Dealing (defenses based on alleged representations made outside of the Loan documents);

No. 27 for Tortious Interference with Contracts and Business Expectancy (defense based on Plaintiffs' relationships and agreements with third-parties outside of the Loan);

No. 31 for Breach of Fiduciary Duty (defense based on duty allegedly arising apart from the Loan); and

No. 32 for Unclean Hands (defense based on promises allegedly made outside of the loan documents).

The Court holds the Credit Statute does not bar Counts I, III, IV, and XIV, of Plaintiffs' Petition, or Plaintiffs' Affirmative Defense Nos. 1, 2, 4-6, 22-23, 26, 33-34.

## Conclusion

For the reasons set forth above, Defendant's Motion for Summary Judgment on Plaintiffs' Claims and Affirmative Defenses Based on Missouri's Credit Agreement Statute (Doc. 109) and Plaintiffs' Motion for Summary Judgment Regarding Inapplicability of Missouri Credit Agreement Statute of Frauds (Doc. 117) is GRANTED IN PART and DENIED IN PART. The Court GRANTS Defendant summary judgment on Counts II, V-XIII, XV-XVI. The Court strikes Plaintiffs' affirmative defenses nos. 3, 7-21, 24-25, 27-32, 35-36.

**IT IS SO ORDERED.**

Date:   February 5, 2013                    /s/ Greg Kays
                                            GREG KAYS, JUDGE
                                            UNITED STATES DISTRICT COURT